IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MADISON ROBERTSON,

        Plaintiff,

v.                                                                Case No. 24-2341-JWB

TANNER LEE PORTER; SHERIFF BRYAN J. MURPHY,
In his official capacity as ALLEN COUNTY SHERIFF,

        Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on Defendants' motions to dismiss. (Docs. 25, 27.) The motions have been fully briefed and are ripe for decision. (Docs. 26, 28, 35, 36, 38, 39.) The motions are TAKEN UNDER ADVISEMENT for the reasons stated herein.

**I.    Facts**

The facts set forth herein are taken from the second amended complaint ("SAC").[1] (Doc. 43.) Plaintiff is an 18-year-old female who lives in Allen County, Kansas. Defendant Tanner Lee Porter is a former deputy with the Allen County Sheriff's Office. Defendant Bryan Murphy is the Sheriff of Allen County and is being sued in his "official capacity." (Doc. 43 ¶ 2.) Porter began a sexual relationship with Plaintiff in 2020, when she was only 15 years old. Plaintiff's parents did not become aware of this relationship until December 2021. (*Id.* ¶ 9.)

On Thanksgiving Eve 2021, Porter was parked at Plaintiff's residence in his patrol truck from 12:30 a.m. to 2:00 a.m. During that time, he was calling and texting Plaintiff. Later, Porter

---

[1] Although the SAC was filed after Defendants moved to dismiss, the only change in the SAC was to add Plaintiff's name as she initially filed this matter with a pseudonym. (Doc. 1.) Therefore, the motions to dismiss did not become moot by the filing of the SAC. (*See* Doc. 45.)

1

ran the tags on Plaintiff's boyfriend's vehicle.  On December 7, 2021, Plaintiff's father reported this conduct to Sheriff Murphy who informed Plaintiff's father that he would handle it.  Plaintiff's mother then discovered the nature of the relationship between Plaintiff and Porter.  Plaintiff's parents spoke to Murphy three times the following week.  (*Id.* ¶ 13.)  Plaintiff alleges that Murphy took no action upon receipt of this information.  Porter allegedly continued to follow Plaintiff in his patrol truck although the SAC lacks any factual detail regarding this conduct.  Plaintiff's mother contacted the Kansas Bureau of Investigation ("KBI") to seek help regarding Porter's conduct and was told that they could not get involved unless they were invited by local law enforcement.  (*Id.* ¶ 14.)

On December 13, 2021, Plaintiff's parents met with Murphy in a parking lot where they disclosed evidence of "their daughter being molested by" Porter.  (*Id.* ¶ 25.)  Murphy was hostile during the meeting because of Plaintiff's mother's contact with the KBI.  (*Id.* ¶ 26.)

According to the SAC, in the summer of 2021, Murphy received a video of Porter at an underage drinking party.  On information and belief, there were reports of other complaints about Porter attempting to date a young woman after he had pulled over her boyfriend.  (*Id.* ¶ 17.)  Porter's last day with Allen County was December 28, 2021.  In October 2022, Porter was charged with engaging in sexual intercourse with a child between the ages of 14 and 16.  This criminal conduct occurred on July 15, 2021.  On June 24, 2024, an amended complaint charged Porter with rape of a child.  These charges involved Plaintiff as the victim.  (*Id.* ¶¶ 19–20.)

Plaintiff makes further allegations regarding Allen County's failure to supervise and train their deputies.  Plaintiff alleges that deputies have not been sufficiently trained in the use of tasers and that, in March 2024, another deputy was arrested on suspicion of sex crimes against a minor.  (*Id.* ¶ 21.)

Plaintiff brings this action against Defendants pursuant to 42 U.S.C. § 1983. Defendants have now moved to dismiss Plaintiff's SAC.

**II.     Standard**

Dismissal. In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

Section 1983 Qualified Immunity. Defendant Porter moves for dismissal on the basis of qualified immunity. "Individual defendants named in a § 1983 action may raise a defense of qualified immunity." *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013). Qualified immunity "shields public officials ... from damages actions unless their conduct was unreasonable in light of clearly established law." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quotations omitted). When the defense of qualified immunity is asserted, a plaintiff must show: "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Cillo*, 739 F.3d at 460.

Municipal Liability. The claim against Sheriff Murphy is a claim against the county. *See Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006); *Couser v. Gay*, 959 F.3d 1018, 1031 (10th Cir. 2020) (finding that Kansas sheriffs represent counties when undertaking law enforcement duties including training and supervising officers). Municipal liability against the

county requires more than a violation by one of the municipality's employees. Plaintiff must sufficiently allege: (1) that a violation was committed by an employee; (2) that there is a municipal policy or custom; and (3) a "direct causal link between the policy or custom and the injury alleged." *Graves*, 450 F.3d at 1218.

### III.    Analysis

#### A.  Porter

Porter moves for dismissal on the basis that Plaintiff's allegations fail to state a claim and that he is entitled to qualified immunity. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff alleges a violation of her right to bodily integrity due to Porter's conduct. (Doc. 43 ¶ 5.) The right to bodily integrity and the right to be free from sexual assault and molestation by state actors are protected by the Fourteenth Amendment. *See Abeyta ex rel. Martinez v. Chama Valley Indep. Sch. Dist.*, No. 19, 77 F.3d 1253, 1255 (10th Cir. 1996) ("Sexual assault or molestation by a school teacher violates a student's substantive due process rights.").

In moving to dismiss, Porter argues that Plaintiff's allegations fail to sufficiently allege that he was acting under color of state law. Section 1983 liability only attaches to acts that occur under color of law; this is a "jurisdictional requisite for a § 1983 action." *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West*, 487 U.S. at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). "Acts of a state officer in the

4

ambit of his personal pursuits are not acts under color of state law." *Hall v. Witteman*, 569 F. Supp. 2d 1208, 1221 (D. Kan. 2008) (citing *Screws v. United States*, 325 U.S. 91 (1945)). In the context of a public employee, such as Porter was here, the Tenth Circuit has held that, while "state employment is generally sufficient to render the defendant a state actor .... at the same time, it is well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state.'" *Jojola*, 55 F.3d at 493. Thus, Plaintiff has the burden to plead the existence of a nexus "between the defendant's conduct and the defendant's badge of state authority in order to demonstrate action was taken under color of state law." *Id.* at 494. The Tenth Circuit has instructed courts to look at "the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties" in determining whether an act was taken under color of state law. *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1353 (10th Cir. 1996).

Here, with respect to the allegation of sexual misconduct and rape that occurred in July 2021, Plaintiff has wholly failed to allege any circumstances surrounding these crimes. Rather, the only allegation Plaintiff points to is the conclusory allegation that Porter was acting under color of state law. (Doc. 35 at 11.) This is entirely conclusory and insufficient to establish her claim. Plaintiff has failed to allege facts that would plausibly show that Porter was acting under color of state law at the time of the sexual assault. *See Jojola*, 55 F.3d at 493–95 (finding that allegations surrounding molestation by a state actor were insufficient to allege the nexus).

Plaintiff also argues that her allegations regarding the conduct during November and December 2021 are sufficient to show that Porter was acting under color of state law. Those allegations, however, do not sufficiently state a constitutional violation pertaining to bodily integrity. While the allegations state that he was in his patrol truck at the time he was parked

outside of Plaintiff's home, the facts surrounding the alleged constitutional violation are missing. Rather, Plaintiff alleges that Porter "stalked" her and "harassed" her by texting and sitting outside her house for four hours. Plaintiff also alleges that he continued to stalk her but fails to provide any factual detail regarding Porter's actions. Without any assault on her person, the court fails to see how Porter violated Plaintiff's right to bodily integrity and Plaintiff fails to allege a separate constitutional violation as to these allegations. *See Gilliam v. USD No. 244 Sch. Dist.*, 397 F. Supp. 2d 1282, 1288 (D. Kan. 2005) (discussing that "conduct falling shy of sexual molestation or assault does not give rise to an actionable § 1983 substantive due process claim" on the basis of a violation of bodily integrity.)

There are also allegations that Plaintiff was "sexually assault[ed]" after Plaintiff's parents informed Murphy about Porter's actions in December 2021 but there are no factual allegations regarding the circumstances surrounding such conduct for the court to conclude that a violation occurred and that the actions were taken under color of law. (Doc. 43 ¶ 27.) Therefore, the allegations lack a sufficient factual basis for the court to determine that Plaintiff's constitutional right to bodily integrity was violated.

**B. Murphy**

Sheriff Murphy moves for dismissal on the basis that Plaintiff's SAC fails to state a claim against him. The SAC clearly states that the claim against Murphy is one in his official capacity. Such a claim requires Plaintiff to sufficiently allege a constitutional violation by Porter due to a municipal policy. *Graves*, 450 F.3d at 1218. Based on the pleadings, Plaintiff is asserting that the violation of her right to bodily integrity was caused by Sheriff Murphy's policy of inadequate training and supervision. Because the court has found Plaintiff's allegations insufficient to allege a constitutional violation by Porter, this claim is subject to dismissal.

Although the SAC only explicitly states an official capacity claim against Murphy, (Doc. 43 ¶ 2), Plaintiff's factual allegations and arguments in her brief appear to indicate that she is also alleging an individual capacity claim against Murphy for his own inaction that allegedly resulted in a violation of her rights. For example, Plaintiff's allegations discuss "supervisor" liability (Doc. 43 at 5) which is a type of individual liability in a § 1983 claim. *See Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) ("A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability.") Personal liability includes both personal involvement or supervisory liability due to a policy. *Id.* at 1164-1165 (discussing personal liability of a supervisor through "his personal participation" "or the promulgation of a policy.").

As discussed, Plaintiff's factual allegations are insufficient to state such a claim against Porter. Therefore, to the extent Plaintiff is alleging that Murphy is personally liable because her right to bodily integrity was violated due to a policy, she has failed to state a claim.

Plaintiff also makes several allegations regarding Murphy's inactions after being told about Porter's inappropriate relationship with Plaintiff and his actions in following Plaintiff and texting her in November and December. These allegations, however, are insufficient to establish that Murphy himself violated Plaintiff's right to bodily integrity. Therefore, this claim is subject to dismissal.

Although Plaintiff's allegations are insufficient to state a claim against Porter and Murphy as currently pled in the SAC, the nature of the allegations are troubling to the court. Therefore, the court will provide Plaintiff with an opportunity to amend the complaint to correct the deficiencies identified herein and add facts to support her claims, if she is able to do so.

**IV.    Conclusion**

8

Defendants' motions to dismiss (Docs. 25, 27) are TAKEN UNDER ADVISEMENT. Plaintiff is to file an amended complaint on or before June 10, 2025. If Plaintiff fails to do so, the motions to dismiss will be granted without further notice.

IT IS SO ORDERED.  Dated this 29th day of May, 2025.

                                             __s/ John Broomes_____
                                             JOHN W. BROOMES
                                             UNITED STATES DISTRICT JUDGE