IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MADISON L. ROBERTSON,

   Plaintiff,

v.                 Case No. 24-2341-JWB

TANNER LEE PORTER; SHERIFF
BRYAN J. MURPHY, *In his official
and individual capacity as* ALLEN
COUNTY SHERIFF,

   Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on two motions: (1) a motion to dismiss filed by Defendant Bryan J. Murphy (Doc. 49); and (2) a motion for judgment on the pleadings filed by Defendant Tanner L. Porter (Doc. 60). The motions are fully briefed and are ripe for decision. (Docs. 50, 53, 57, 60–62.) For the reasons stated herein, Defendant Murphy's motion to dismiss is DENIED and Defendant Porter's motion for judgment on the pleadings is GRANTED IN PART AND DENIED IN PART.

**I. Facts**

The facts set forth herein are taken from the third amended complaint ("TAC"). (Doc. 47.) Madison L. Robertson ("Plaintiff") is a 20-year-old female who lives in Allen County, Kansas. Defendant Tanner Lee Porter ("Porter") is a former deputy with the Allen County Sheriff's Office. Defendant Bryan J. Murphy ("Murphy") is the former Sheriff of the Allen County Sheriff's Office and is being sued by Plaintiff in both his official and individual capacity. (*Id.* ¶ 2.) Sheriff Murphy was Deputy Porter's supervisor during his employment as a deputy for Allen County. (*Id.* ¶ 22.)

1

Porter began a sexual relationship with Plaintiff in August 2020, when she was only 15 years old. Plaintiff's parents became aware of this relationship in December 2021. (*Id.* ¶ 10.)

On Thanksgiving Eve 2021, Porter, while on duty, was parked in his patrol vehicle at Plaintiff's residence from 12:30 a.m. to 2:00 a.m. (*Id.* ¶ 10.) During that time, he called and texted Plaintiff repeatedly and even contacted Plaintiff's sister until Plaintiff eventually responded, went outside to confront Porter and was subsequently kissed, inappropriately touched, and molested by him. (*Id.* ¶ 11.) After this incident, Porter began harassing individuals close to Plaintiff. For example, Porter ran the tags on Plaintiff's boyfriend's vehicle in an attempt to harass and coerce Plaintiff. On December 7, 2021, Plaintiff's father reported this conduct to Sheriff Murphy who informed Plaintiff's father that he would handle it. (*Id.* ¶ 13.) Plaintiff's mother then discovered the nature of the relationship between Plaintiff and Porter. Plaintiff's parents eventually spoke to Murphy three times within the week after discovering the details of Porter's inappropriate conduct. (*Id.* ¶ 16.) Plaintiff alleges that Murphy took no action upon receipt of this information despite his assurances to the contrary. (*Id.* ¶¶ 13–16.)

Porter allegedly continued to follow Plaintiff in his patrol vehicle during the following weeks. (*Id.* ¶ 16.) As a result of this and Murphy's inaction, Plaintiff's mother contacted the Kansas Bureau of Investigation ("KBI") to seek help regarding Porter's conduct. (*Id.* ¶ 17.) She was told by the KBI that they could not get involved unless they were invited by local law enforcement. (*Id.*)

On December 12, 2021, Plaintiff's parents discovered that Porter was still stalking their daughter and Mr. Robertson again reached out to Murphy and warned him about Porter's conduct. (*Id.* ¶ 24.) On the following day, Plaintiff's parents met with Murphy in a parking lot—as he allegedly refused to meet in a private office in a building—where they disclosed evidence of "their

daughter being molested" on multiple occasions by Porter. (*Id*. ¶ 26.) Murphy was visibly hostile and irritated during the meeting because he learned that Plaintiff's mother had contacted the KBI in order to get help for their daughter. (*Id*. ¶ 27.)

According to the TAC, in the summer of 2021, Murphy received multiple complaints involving Porter, including (1) a video of Porter at an underage drinking party; (2) a female co-worker in the Sheriff's office complained about sexual harassment by Porter; and (3) two alleged complaints from concerned citizens that Porter had a "female passenger with him in his patrol vehicle," which later was determined to have been Plaintiff. (*Id*. ¶ 22.) Plaintiff further alleges that Porter continued to harass the Plaintiff by running the tags of Plaintiff's boyfriend to find out where he lived and instructing another officer in Allen County—former Deputy Joe Stotler—to follow and "sit on" the boyfriend while Porter responded to a call because he planned to "write him a ticket on some phony charge." (*Id*. ¶ 8.)

Porter's last day with the Allen County Sheriff's Department was December 28, 2021, approximately 21-days after Plaintiff's father first reported Porter's stalking and harassment to Murphy. (*Id*. ¶¶ 13, 18.) On October 24, 2022, Porter was charged with engaging in sexual intercourse with a child between the ages of 14 and 16. (*Id*. ¶ 19.) This criminal conduct occurred on July 15, 2021. On June 24, 2024, an amended complaint charged Porter with rape of a child. (*Id*. ¶ 20.) These charges involved Plaintiff as the victim. (*Id*. ¶¶ 19–20.) Eventually, Porter pled guilty and was sentenced to having indecently solicited a child.[1]  (Doc. 61-1 at 1.)

---

[1] The court takes judicial notice of Porter's state court criminal conviction. *See* Allen County, Kansas, District Court case number AL-2022-CR-000317 order file stamped Sept. 6, 2024, which is attached as an exhibit to Plaintiff's Response (Doc. 61) and shows Porter's plea and criminal conviction for one count of Indecent Solicitation of a Child that occurred on July 1, 2021. *See Est. of Holmes by & through Couser v. Somers*, No. 18-1221-JWB, 2021 WL 236080, at *6 (D. Kan. Jan. 25, 2021) (citing *United States v. Ahidley*, 486 F.3d 1184, 1192 n. 5 (10th Cir. 2007) (courts have "discretion to take judicial notice of publicly-filed records ... concerning matters that bear directly upon the disposition of the case at hand.").

Plaintiff makes further allegations regarding Allen County's and Sheriff Murphy's failure to supervise and train their deputies. (Doc. 47 ¶ 23.) Specifically, Plaintiff alleges that deputies of the department have not been sufficiently supervised and that as a result another deputy was arrested on suspicion of sex crimes against a minor on September 3, 2024. (*Id.* ¶ 22.) Plaintiff alleges that Murphy failed to take action or otherwise intervene, despite having knowledge of this misconduct. (*Id.* ¶ 29.)

Plaintiff brings this action against Defendants pursuant to 42 U.S.C. § 1983, arguing Plaintiff's right to bodily integrity was violated by Porter acting under color of state law and for Murphy's failure to intervene after being informed of Porter's violations on multiple occasions. (*Id.* ¶¶ 4, 28.) Plaintiff brings supplemental state law claims of battery, assault, and negligence, under the Kansas Tort Claims Act, against Porter as well as a claim of negligent supervision against Murphy. (*Id.* ¶¶ 31–34.) Defendants have now moved to dismiss Plaintiff's TAC. (Docs. 50, 60.)

## II. Standard

Dismissal. Defendants Murphy and Porter move for dismissal on the basis that Plaintiff failed to state a claim. A motion for judgment on the pleadings utilizes the same standard as motions under Rule 12(b)(6). *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003). In order to withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

Section 1983 Qualified Immunity. Defendant Porter moves for dismissal on the basis of qualified immunity. "Individual defendants named in a § 1983 action may raise a defense of qualified immunity." *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013). Qualified immunity "shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quotations omitted). When the defense of qualified immunity is asserted, a plaintiff must show: "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Cillo*, 739 F.3d at 460.

Municipal Liability. The official capacity claim against Sheriff Murphy is a claim against the county. *See Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006); *Couser v. Gay*, 959 F.3d 1018, 1031 (10th Cir. 2020) (finding that Kansas sheriffs represent counties when undertaking law enforcement duties). Municipal liability against the county requires more than a violation by one of the municipality's employees. Plaintiff must sufficiently allege: (1) that a violation was committed by an employee; (2) that there is a municipal policy or custom; and (3) a "direct causal link between the policy or custom and the injury alleged." *Graves*, 450 F.3d at 1218.

### III. Analysis

#### A. Deputy Porter

Plaintiff brings a claim under 42 U.S.C. § 1983 against Porter for alleged violations of her right to bodily integrity. (Doc. 47 ¶¶ 4, 28.) Plaintiff also brings state law claims against Porter for battery, assault, and negligence. (*Id.* ¶¶ 31–34.) These claims will be addressed in turn.

##### 1. Section 1983 Claim

Porter moves for dismissal on the basis that Plaintiff's allegations fail to state a claim and

that he is entitled to qualified immunity. (Docs. 60, 62.) "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In the current matter, Plaintiff alleges a violation of her right to bodily integrity as a result of Porter's sexual misconduct. (Doc. 47 ¶ 4.) The right to bodily integrity and the right to be free from sexual assault and molestation by state actors are protected by the Fourteenth Amendment. *See Abeyta ex rel. Martinez v. Chama Valley Indep. Sch. Dist., No. 19*, 77 F.3d 1253, 1255 (10th Cir. 1996) ("Sexual assault or molestation by a school teacher violates a student's substantive due process rights."); *United States v. Golubski*, No. 22-CR-40055-TC-1, 2024 WL 3202345, at *5 (D. Kan. June 27, 2024) ("The right to bodily integrity has been and continues to be recognized by the Supreme Court [as a protected substantive due process right]."). Thus, Plaintiff has sufficiently alleged a violation of a constitutional right.

In moving to dismiss, Porter argues that Plaintiff's allegations fail to sufficiently allege that he was acting under color of state law. (Doc. 60 at 5.) It is clearly established that § 1983 liability may only attach to acts done under the color of state law. *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1353 (10th Cir. 1996). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West*, 487 U.S. at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). However, "the fact that a tort was committed by an individual employed by the state does not, *ipso facto*, warrant attributing all of the employee's actions to the state." *Jojola v. Chavez*, 55 F.3d 488, 493 (10th Cir. 1995) (internal quotation marks omitted). Thus, the test formulated by the Tenth Circuit to demonstrate that an action was taken under color of state law requires Plaintiff to plead the

existence of a "real nexus" between the public employee's misuse of their authority and the constitutional violation committed. *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1156 (10th Cir. 2016) (citing *Jojola*, 55 F.3d at 493). In making this determination, the Tenth Circuit has instructed lower courts to examine "the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." *David*, 101 F.3d at 1353.

In the context of sexual harassment and misconduct, the Tenth Circuit has applied § 1983's color of law requirement. *Id*. at 1354. Specifically, liability under § 1983 for sexual harassment and otherwise violating one's right to bodily integrity requires the officer to exert "some authority . . . over the victim." *Id*. (citing *Woodward v. City of Worland*, 977 F.2d 1392, 1401 (10th Cir. 1992), *cert. denied*, 509 U.S. 923 (1993)).

In the instant case, accepting the allegations found within Plaintiff's TAC as true and affording her the benefit of favorable inferences pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff has established that Porter acted under color of state law when he engaged in the sexual misconduct at issue. In particular, the TAC alleges sufficient facts, when viewed in their totality, to support a plausible inference that Porter misused his official authority to facilitate and perpetuate the sexual relationship with Plaintiff. The allegations in the TAC describe Porter's use of state resources and his position as a law enforcement officer in a manner that created a psychologically and physically coercive environment. Specifically, Plaintiff alleges that Porter appeared at her residence in his patrol vehicle while on duty, persistently contacting her and her family members until she responded. (Doc. 47 ¶ 10.) These allegations demonstrate Porter's misuse of government resources and his overall exploitation of his official authority to maintain contact with Plaintiff and assert control over her. In response, Defendant Porter correctly points out that the fact that police officers are on duty at the time of the alleged violation "does not alone render" their actions

7

to have occurred under color of state law. *Schaffer*, 814 F.3d at 1155. If this were the only allegation in the complaint, then Plaintiff's pleadings would be ripe for dismissal. But it is not.

The facts alleged in the TAC, taken together, show that Porter engaged in conduct that carried an unmistakable element of psychological coercion made possible only by his official capacity. First, Porter allegedly ran the tags on Plaintiff's boyfriend's vehicle and enlisted another officer—former Allen County deputy Joe Stotler—to follow the boyfriend while Porter was responding to a call. (Doc. 47 ¶ 8.) This conduct, at a minimum, reflects more than merely personal misconduct; it demonstrates Porter's calculated misuse of law enforcement resources, patrol vehicles, and his authority over fellow officers. The TAC further alleges that Plaintiff was observed as a passenger in Porter's patrol vehicle on at least two occasions based on citizens' complaints to Sheriff Murphy. (*Id*. ¶ 22.) This again indicates misuse of government resources to perpetuate a violation of law.

Plaintiff alleges that Porter violated her right to bodily integrity when he called and texted her repeatedly while on duty and parked outside her home until Plaintiff eventually went outside to confront Porter and was kissed, inappropriately touched, and ultimately molested. (*Id*. ¶¶ 10–11, 26.) Defendant Porter appears to argue that this description is overly vague and unspecific and thus does not amount to a violation of Plaintiff's bodily integrity as a matter of law. (Doc. 62 at 3–4.) At this stage of the litigation, this argument is unpersuasive. An allegation of kissing, inappropriate touching, and molestation plainly amounts to a violation of one's right to bodily integrity. *See Abeyta*, 77 F.3d at 1255 ("Sexual assault or molestation by a school teacher violates a student's substantive due process rights."). Finally, Plaintiff alleges that Murphy received evidence from her parents "which indicated their daughter was being molested by Deputy Porter." (Doc. 47 ¶ 26.) This allegation further supports a pattern of inappropriate touching and molestation

of Plaintiff by Porter. Accepting these factual allegations as true and taking them together—*i.e.*, (1) the on-duty stalking in a patrol vehicle while on duty, (2) the misuse of law enforcement resources to investigate and threaten Plaintiff's boyfriend, and (3) Plaintiff's presence in the patrol vehicle itself on multiple occasions—the court finds that Plaintiff has alleged a sufficient nexus between Porter's misconduct, culminating in a violation of Plaintiff's right to bodily integrity, and the performance of his official duties. (*Id.* ¶ 8, 10, 22.) Unlike the facts pled in the Second Amended Complaint (*see* Doc. 43), the facts pled in the TAC, if true, would "shock[] the conscience" and give rise "to an actionable § 1983 substantive due process claim." *Gilliam v. USD No. 244 Sch. Dist.*, 397 F. Supp. 2d 1282, 1288 (D. Kan. 2005) (citing *Abeyta*, 77 F.3d at 1255). Thus, Plaintiff has sufficiently pled facts to plausibly state a claim.

Porter also moves for dismissal on the basis that he is entitled to qualified immunity. When the defense of qualified immunity is asserted, Plaintiff must show: "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Cillo*, 739 F.3d at 460. Regarding the first element, as discussed *supra*, Plaintiff has sufficiently pled facts that Defendant Porter violated her constitutional right to bodily integrity. (Doc. 47 ¶¶ 10–11, 26.) Next, Plaintiff must show that her constitutional right to bodily integrity is clearly established. *Cillo*, 739 F.3d at 460.

Courts are not to define "clearly established" law at a high level of generality. *City of Tahlequah, Okla. v. Bond*, 595 U.S. 9, 12 (2021). Accordingly, "[a] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). In the current matter, qualified immunity does not protect Porter, as the conduct Plaintiff alleges—sexual assault and molestation of a minor under color of state law—constitutes a clearly established constitutional violation. *See*,

9

*e.g.*, *Johnson v. Martin*, 195 F.3d 1208, 1211 (10th Cir. 1999) (clearly established that government official sexually harassing private citizen violated the Equal Protection Clause); *Keith v. Koerner*, 843 F.3d 833, 837 (10th Cir. 2016) ("[A]n inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards." (alteration in original) (quoting *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993)); *Hess v. Garcia*, 72 F.4th 753, 758 (7th Cir. 2023) ("[S]exual assault by an official acting under color of law violates the constitutional rights of the victim"). "Put simply, it is clearly established that a state official violates an individual's right to bodily integrity when he . . . commits a sexual assault . . . while acting under color of state law." *United States v. Golubski*, No. 22-CR-40055-TC-1, 2024 WL 3202345, at *7 (D. Kan. June 27, 2024). Thus, Plaintiff has pled facts sufficient to overcome Porter's qualified immunity defense.

While the connection between the sexual misconduct and Porter's official duties will require further factual development, the allegations taken as a whole satisfy the pleading standard at this stage of the litigation. In summary, determining whether the right to bodily integrity has been violated and whether qualified immunity applies requires the court to conduct a fact-intensive inquiry, which is "not ordinarily suitable for" the motion to dismiss stage. *Thomas v. Kaven*, 765 F.3d 1183, 1196 (10th Cir. 2014). Thus, Plaintiff's § 1983 claim against Porter may proceed.

### 2. State Law Claims

Defendant Porter also seeks dismissal of Plaintiff's state law claims of battery, assault, and negligence for failure to state a claim. (Doc. 60.) Plaintiff incorporates all previously mentioned allegations in asserting these state law claims.

"Under Kansas law, the tort of assault is defined as 'an intentional threat or attempt, coupled with apparent ability, to do bodily harm to another, resulting in immediate apprehension of bodily harm.' The tort of battery is defined as 'the unprivileged touching or striking of one

person by another, done with the intent of bringing about either a contact or an apprehension of contact, that is harmful or offensive.'" *Debord v. Mercy Health Sys. of Kansas, Inc.*, 860 F. Supp. 2d 1263, 1278 (D. Kan. 2012), *aff'd*, 737 F.3d 642 (10th Cir. 2013) (citing PIK Civ. 4th 127.01-.02) (internal citations omitted). Accepting the allegations in the TAC as true, Plaintiff has sufficiently alleged civil battery and assault. Plaintiff claims that on July 15, 2021, Porter engaged in sexual intercourse with Plaintiff (*id.* ¶¶ 19–20), which is the same incident for which Porter was ultimately convicted of indecent solicitation of a child. (*See* Doc. 61-1 at 1.) Kansas law recognizes a civil remedy for certain conduct made punishable under the Kansas Criminal Code, such as assault and battery. *See Smith v. Welch*, 265 Kan. 868, 876 (1998) ("Assault [and] battery . . . are statutory crimes; however, the civil injury caused by an assault [or] battery . . . is not merged in the crime in that the injured party has a civil right or remedy against the perpetrator of the crime."). Porter's criminal conviction for indecent solicitation of a child necessarily required an admission through his guilty plea that Porter engaged in intentional sexual contact with Plaintiff. Such conduct sufficiently pleads the elements required for civil battery under Kansas law: intentional, unprivileged, and offensive touching. *Debord*, 860 F. Supp. 2d at 1278.

Further, Plaintiff alleges instances of inappropriate touching beyond the July 15, 2021, incident, including kissing and inappropriate touching that occurred when Porter was parked outside Plaintiff's home. (Doc. 47 ¶ 11.) These allegations, combined with Porter's course of conduct involving stalking and harassing, could reasonably establish the apprehension necessary for civil assault, and the offensive contact necessary for battery. (*Id.* ¶¶ 8, 10–11, 22, 32–34.) Thus, Plaintiff has pled facts sufficient to state a claim for assault and battery under Kansas law.

Finally, in Kansas, to prevail on a negligence claim, a plaintiff must prove the following four elements: (1) duty, (2) breach, (3) causation, and (4) damages. *See Reardon for Est. of*

11

*Parsons v. King*, 310 Kan. 897, 903 (2019). With regard to Plaintiff's negligence claim against Porter, the court finds that Plaintiff has failed to allege sufficient facts to establish the existence of a duty owed by Porter. The TAC contains no factual allegations identifying what specific duty Porter owed Plaintiff that would have given rise to a negligence claim independent of the intentional torts alleged. Plaintiff's response to Porter's motion to dismiss makes no mention of negligence or any duty owed. While the court has construed Plaintiff's allegations liberally and afforded her all reasonable inferences, as is required by law (*see Archuleta*, 523 F.3d at 1283), Plaintiff's negligence claim provides no facts from which an inference could be made. Thus, Plaintiff's negligence claim is dismissed for failure to state a claim.

In summary, the court finds Plaintiff's § 1983 and state law claims for battery and assault against Defendant Porter contain sufficient allegations of fact to state a claim. However, Plaintiff's state law claim for negligence does not, and it is thereby dismissed. The court will now address Plaintiff's claims against Defendant Murphy.

### B. Sheriff Murphy

Plaintiff brings a claim under 42 U.S.C. § 1983 against Murphy, in both his individual- and official-capacity, alleging failure to intervene because he failed to stop Porter from violating Plaintiff's constitutional right to bodily integrity. (Doc. 47 ¶ 28.) Second, Plaintiff appears to bring a state law claim against Murphy for "negligent supervision" due to his failure to control Porter. (*Id*. ¶ 34.) These claims will be addressed in turn.

#### 1. Section 1983 Claim

Murphy moves for dismissal on the basis that Plaintiff's TAC fails to state a claim against him. (*See* Doc. 50.) The TAC states that the claim against Murphy is brought in both his official and individual capacity. (Doc. 47 ¶ 2.) The court addresses both capacity claims in turn.

### a. Official Capacity Claim

Plaintiff has sued Murphy in his official capacity as the Sheriff of Allen County. Plaintiff alleges Murphy's failure to adequately train and supervise his deputies, specifically Porter, led to violations of Plaintiff's constitutional rights. (*Id.* ¶ 22.) Murphy asserts that Plaintiff has failed to state a claim.

"An official capacity suit 'is, in all respects other than name, to be treated as a suit against the entity.'" *Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1048 (10th Cir. 2022) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Put another way, a suit against an officeholder—such as then-Sheriff Murphy—in his official capacity "is not a suit against the official personally, for the real party in interest is the entity." *Graham*, 473 U.S. at 166; *see also McDonald v. Wise*, 769 F.3d 1202, 1215 (10th Cir. 2014) (explaining that a municipality "is a 'person' subject to § 1983 liability.") Thus, in the current matter, the official capacity claim against Sheriff Murphy is, in effect, a claim against the county. *See Couser*, 959 F.3d at 1031 (finding that Kansas sheriffs represent counties when undertaking law enforcement duties including training and supervising officers).

To establish a municipal liability claim under a failure-to-train or -supervise theory, Plaintiff must allege that Allen County had in place (1) a custom or policy of failure to supervise and train; (2) deliberate indifference on the part of the decision maker; and (3) a causal link to the constitutional deprivation. *See Gates v. Unified Sch. Dist. No. 449 of Leavenworth Ctny., Kan.*, 996 F.2d 1035, 1041 (10th Cir. 1993). A municipal custom or policy may be established through an "informal custom 'amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage

13

with the force of law.'" *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

Plaintiff has sufficiently alleged all three elements. First, Plaintiff claims a pattern of inadequate training and supervision demonstrating an informal policy. Specifically, the TAC states that "[t]he Allen County Sheriff's Office under Murphy has a history of failing to supervise and train deputies." (Doc. 47 ¶ 21.) This alleged pattern includes: (1) Murphy receiving a video of Porter at an underage drinking party in the summer of 2021; (2) multiple citizen complaints that Porter had a female passenger in his patrol vehicle (who was later identified as Plaintiff) from early November 2021; and (3) a complaint from a female co-worker in the Allen County Sheriff's office that Porter had sexually harassed her in the summer of 2021. (*Id.* ¶ 22.) These allegations support a plausible inference of a widespread practice of inadequate supervision. *See Bryson*, 627 F.3d at 788.

Second, despite receiving complaints about Porter's sexual misconduct beginning in summer 2021—several months prior to the November 2021 incident—Murphy took no meaningful action. (*Id.*) This extended period of inaction is significant in alleging deliberate indifference because it allowed the pattern of abuse to continue and escalate, resulting in additional harm to Plaintiff. When Plaintiff's parents contacted Murphy three times in December 2021, explicitly warning him that Porter was stalking and molesting their minor daughter, Murphy allegedly never confronted or disciplined Porter. (Doc. 47 ¶¶ 13, 16, 23–26, 29.) Murphy's repeated failure to act sufficiently pleads deliberate indifference.

Finally, Plaintiff has alleged causation. Murphy's inaction allowed Porter to continue stalking and molesting Plaintiff while on duty and using law enforcement resources. (*Id.* ¶¶ 16,

28, 29.) Therefore, the court finds that Plaintiff has sufficiently stated a plausible official capacity claim under § 1983 at this stage of the proceedings.[2]

### b. Individual Capacity Claim

Plaintiff has sued Murphy in his individual capacity. Plaintiff alleges Murphy violated § 1983 by failing to intervene and stop Porter's constitutional violation of Plaintiff's right to bodily integrity. (*Id*. ¶ 28.) Plaintiff characterizes this § 1983 failure to intervene claim under a theory of supervisory liability, and thus argues that Murphy, as a supervisor, was required to respond to allegations of misconduct by his subordinates, here Porter—a responsibility he allegedly failed to fulfill. (*Id*. ¶¶ 23–28.) Supervisor liability is a type of individual liability in a § 1983 claim. *See Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) ("A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability."). Murphy asserts that Plaintiff has failed to state a claim.

To impose § 1983 liability, Plaintiff must sufficiently allege that a subordinate violated a constitutional right. This requirement has been sufficiently pled. (*See supra* Section III.A.1.) Next, to hold a supervisor liable under § 1983 individually, Plaintiff must establish: "(1) personal involvement; (2) causation; and (3) state of mind." *Wise v. Caffey*, 72 F.4th 1199, 1210 (10th Cir. 2023). Section 1983 "does not authorize . . . liability for a supervisor based solely on the actions of his subordinates." *Burke v. Regaldo*, 935 F.3d 960, 997 (10th Cir. 2019) (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013)). However, the Tenth Circuit has viewed these elements as "not . . . necessarily distinct." *Dodds v. Richardson*, 614

---

[2] Plaintiff filed her complaint naming Murphy in his official capacity. (Doc. 47.) However, Plaintiff acknowledges that Murphy is no longer the Sheriff of Allen County. Federal practice generally dictates that when a public officer, who is a party in his official capacity ceases to hold office while the action is pending, the officer's successor is substituted. *See* Fed. R. Civ. P. 25(d). Here, however, it is unclear to the court whether Plaintiff is seeking to substitute the current Sheriff or maintain the official capacity claim against Murphy. (Doc. 53 at 9–10.) Accordingly, this court directs the parties to take up this matter—that is, whether the current acting Sheriff of Allen County ought to be substituted into this litigation in his official capacity—with the magistrate judge at the parties' next conference.

F.3d 1185, 1196 (10th Cir. 2010). In other words, evidence of a supervisor's "knowledge of and acquiescence in a constitutional violation" has often sufficed at the motion to dismiss stage to satisfy the "personal involvement, causal connection, and [state of mind]" elements for § 1983 supervisory liability. *Id*. (citing *Jenkins v. Wood*, 81 F.3d 988, 995 (10th Cir.1996) (holding that a plaintiff may satisfy the supervisory liability elements under § 1983 by "showing the defendant-supervisor . . . had actual knowledge of the violation and acquiesced in its continuance").

To satisfactorily plead personal involvement, Plaintiff must show "an affirmative link between the supervisor and the constitutional violation." *Burke*, 935 F.3d at 997. Plaintiff can establish the defendant supervisor's personal involvement by demonstrating his "knowledge of the [constitutional] violation and acquiesce[nce] in its continuance." *Dodds*, 614 F.3d at 1195 (citing *Jenkins*, 81 F.3d at 995). Finally, because Plaintiff is seeking liability under § 1983 for conduct arising out of Murphy's supervisory role, Plaintiff must sufficiently plead that Murphy "by his own conduct" violated Plaintiff's constitutional rights. *Id*. at 1198. In the instant case, Plaintiff has alleged sufficient facts to establish Murphy's personal involvement. Plaintiff claims that her father called Murphy on December 7, 2021, to report that Porter was stalking and sexually harassing Plaintiff. (Doc. 47 ¶ 23.) On December 12, 2021, when Plaintiff's parents discovered Porter was still stalking their daughter, Plaintiff's father again contacted Murphy, and Murphy stated that he would handle the situation. (*Id*. ¶ 25.) Further, Plaintiff states that Murphy received a complaint that Plaintiff had been riding with Porter in his patrol vehicle. (*Id*. ¶ 22.) Despite these multiple reports and Murphy's acknowledgement as to the situation, Murphy allegedly never took action to address Porter's conduct. (*Id*. ¶¶ 14, 28.) Instead, Porter continued to see Plaintiff and molest her while he remained a deputy under Murphy's supervision. (*Id*. ¶ 28.)

Murphy correctly points out that a "supervisor's mere knowledge" of a constitutional violation is not enough to create supervisory liability under § 1983. *Schneider*, 717 F.3d at 767. However, this argument fails to consider Murphy's extent of personal involvement in the active continuation and concealment of Porter's constitutional violation. Specifically, Plaintiff's parents, at Murphy's request, met with Murphy in person and showed him evidence indicating their daughter was being molested by Porter. (Doc. 47 ¶ 26.) Allegedly, this meeting took place in a parking lot because Murphy declined wanting to speak in his office. (*Id.*) Murphy took no action despite an affirmative duty to intervene. *See Bledsoe v. Carreno*, 53 F.4th 589, 616 (10th Cir. 2022) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("The Tenth Circuit has recognized 'that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers . . . .'"). These allegations at the motion to dismiss stage sufficiently show that Murphy had actual knowledge of his direct subordinate, Porter, violating Plaintiff's right to bodily integrity and, further, that Murphy acquiesced and was personally involved in its continuance by meeting with Plaintiff's parents and failing to take any action.

To satisfactorily plead causation, Plaintiff must show "that the defendant's alleged action(s) caused the constitutional violation by setting in motion a series of events that the defendant knew or reasonably should have known would cause [Porter] to deprive [Plaintiff] of her constitutional rights." *Burke*, 935 F.3d at 997 (citation omitted). In the current matter, Murphy's failure to act after receiving multiple reports of Porter's misconduct set in motion a series of events that allowed Porter to continue violating Plaintiff's rights. (Doc. 47 ¶¶ 16, 29.) Murphy's deliberate failure to intervene—despite having the authority to control and discipline his deputy—directly caused Porter's continued violations of Plaintiff's constitutional rights. (*Id.* ¶

28.) These allegations—along with those discussed by the court in discussing the personal involvement element—sufficiently plead causation.

Finally, to satisfactorily plead the state-of-mind element, Plaintiff must show that Murphy "acted with deliberate indifference." *Perry v. Durborow*, 892 F.3d 1116, 1122 (10th Cir. 2018) (citations omitted). "A supervisor acts with deliberate indifference when (1) he is 'aware of facts from which the inference could be drawn that a substantial risk of serious harm existed," (2) he draws that inference, and (3) he fails "to take reasonable steps to alleviate that risk.'" *Pierce v. Kobach*, No. 24-3008, 2024 WL 1757163, at *2 (10th Cir. 2024) (citing *Burke*, 935 F.3d at 997). First, Murphy was aware of facts from which he could infer a substantial risk of serious harm. Plaintiff alleges that her father informed Murphy on December 7, 2021, and two subsequent times over the course of the next six days, that Porter had been stalking and sexually harassing Plaintiff for months. (Doc. 47 ¶¶ 23–24.) Eventually, Plaintiff's parents allegedly met with Murphy on December 13, 2021, and showed Murphy evidence of their daughter being molested. (*Id*. at 25.) This sufficiently alleges that Murphy was aware of facts from which he could draw an inference of ongoing serious harm to Plaintiff. Second, Murphy did draw such an inference. Specifically, Plaintiff alleges that Murphy told Plaintiff's father—on both December 7th and 13th of 2021— that he would "tak[e] care" of and "handle" the situation involving Porter sexually assaulting Plaintiff. (*Id*. at 13, 24–29.) Further, Plaintiff alleges that Murphy "knew" of Porter's conduct violating Plaintiff's rights. (*Id*. at 29.) Such allegations, taken as true, show facts from which an inference of substantial harm could be drawn and that Murphy did, in fact, draw such an inference. (*Id*. ¶¶ 13, 25, 29.) Third, Murphy failed to take any reasonable steps to alleviate the risk, which "allowed Porter to continue to sexually assault" Plaintiff while Porter was still under Murphy's supervision. *See Keith*, 843 F.3d at 848 (10th Cir. 2016) ("Inaction, in certain instances, can be

enough" to show a failure to take reasonable steps to alleviate a substantial risk of harm). Murphy's inaction in the face of reports of ongoing sexual abuse of a minor by his subordinate demonstrates deliberate indifference, at least sufficient to survive this stage of the proceedings.

In summary, accepting the allegations in the TAC as true and affording Plaintiff all reasonable inferences, Plaintiff has alleged facts sufficient to reasonably infer that Murphy, in both his official and individual capacity, violated § 1983 by failing to intervene to stop Porter's ongoing constitutional violations of Plaintiff's right to bodily integrity.

### 2. State Law Claim

Plaintiff also brings a state law claim against Murphy for "negligent supervision" due to his failure to confront Porter. (*Id*. ¶ 34.) Murphy does not specifically respond to this state law claim but generally asserts that Plaintiff has failed to state a claim. (*See* Doc. 50.) Kansas law recognizes a claim by non-employee third parties for negligent supervision. *Van Deelen v. Johnson*, 535 F. Supp. 2d 1227, 1237 (D. Kan. 2008) (citing *Nwakpuda v. Falley's, Inc*., 14 F. Supp. 2d 1213, 1217 (D. Kan. 1998)). To prevail on a claim of negligent supervision, a plaintiff must show that "the employer had reason to believe that an undue risk of harm to others would exist as a result of the employment of the alleged tortfeasor" and "such harm is within the risk." *Nicks v. Brewer*, No. 10-CV-1220-JAR-JPO, 2010 WL 4868172, at *3 (D. Kan. 2010) (citing *Bell v. City of Topeka, Kan*., 496 F. Supp. 2d 1182, 1194, n. 41 (D. Kan. 2007)). The Kansas Supreme Court recently clarified that an employer owes a third party only a duty of reasonable care. *Reardon*, 310 Kan. 897 at 904. "While an employer's practices when hiring, training, and supervising its employees may be evidence of a breach of an employer's duty of reasonable care to third parties, they are not separate causes of action." *Id*. Therefore, under Kansas law, negligent supervision is merely a theory on which a negligence claim can be brought.

19

Plaintiff has pled sufficient facts to state a negligence claim under a theory of negligent supervision. The TAC alleges multiple complaints about Porter's misconduct, including sexual harassment of a co-worker, Porter had a female passenger (Plaintiff) in his patrol vehicle, and Porter's inappropriate relationship with Plaintiff. (Doc. 47 ¶ 22.) Further, in December 2021, Plaintiff's parents contacted Murphy three times to report Porter was stalking and molesting their minor daughter and showed Murphy evidence of the molestation. (*Id*. ¶¶ 13, 23–26.) Thus, Murphy had reason to believe Porter posed an undue risk of harm to Plaintiff if he were continued to be employed. Plaintiff alleges that due to this inaction, Porter continued to stalk and sexually assault her. (*Id*. ¶¶ 25, 28.) Given the alleged complaints about Porter's misconduct, and the subsequent harm to Plaintiff, she has sufficiently stated a plausible negligent supervision claim.

**IV.   Conclusion**

THEREFORE, Defendant Murphy's motion to dismiss (Doc. 49) is DENIED. Defendant Porter's motion for judgment on the pleadings (Doc. 60) is DENIED IN PART AND GRANTED IN PART. Specifically, Plaintiff's § 1983 claim and state law battery and assault claims may proceed. However, her state law negligence claim against Porter is dismissed.

IT IS SO ORDERED. Dated this 29th day of October, 2025.

                                                _s/ John W. Broomes_
                                                JOHN W. BROOMES
                                                CHIEF UNITED STATES DISTRICT JUDGE